SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00045-AN |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| JASSIEL ALAN DIAZ-ELENES, | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 30 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant, a delivery person for a fentanyl dispatcher network, was involved in delivering more than a kilogram of an incredibly addictive, destructive, and deadly poison that has been devastating the community. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, and the defendant's personal history and characteristics the government believes the requested sentence is both reasonable and justified. The defendant will also very likely be deported to Mexico as a result of his conviction.

**Government's Sentencing Memorandum**                                    **Page 1**

A.      **Summary of Proceedings.**

On February 4, 2026, the defendant pled guilty to Count 1 of the Indictment which charged him with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  The maximum sentence the Court may impose is a term of life imprisonment, fine of $10,000,000, and at least five years of supervised release.  There is a potential mandatory minimum sentence of ten years' imprisonment.  There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government believes the facts underlying the defendant's count of conviction (PSR ¶¶ 19 - 22) and the majority of the Sentencing Guideline calculations (PSR ¶¶ 27 – 29, 31 - 35) are accurately outlined in both the PSR and plea agreement.  The government and U.S. Probation Office disagree about the extent of the role reduction defendant deserves pursuant to USSG § 3B1.2.  PSR ¶ 30, Plea Agreement ¶ 10(A).  The government believes defendant qualifies as a "minor participant," which is a two-level reduction in the offense level, while the U.S. Probation Office believes defendant qualifies as a "minimal participant," which is a four-level reduction in the offense level.

In his plea agreement defendant admitted that:

> At trial the government could prove that defendant conspired with others to distribute and possess with intent to distribute fentanyl here within the District of Oregon.  As part of this conspiracy, on or about January 29, 2025, within the District of Oregon, the defendant was dispatched to deliver approximately 10,000 blue counterfeit M30 pills manufactured with fentanyl, that weighed approximately 1,074 grams, to a customer. Trained drug investigators would testify that the amount of fentanyl seized from the defendant indicated it was possessed for purposes of further distribution.  Fentanyl is a Schedule II controlled substance.

Plea Agreement ¶ 6.

**Government's Sentencing Memorandum**                                                    **Page 2**

The defendant has been held in federal custody since his arrest.

**B.    Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

Based upon the amount of fentanyl the defendant was delivering the parties agree that his initial Base Offense Level is 30, pursuant to USSG § 1B1.3 and 2D1.1(a).  PSR ¶ 27, Plea Agreement ¶ 8.

Because the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and USSG § 2D1.1(b)(18), the parties are asking the Court to grant him a two-level downward departure in his Sentencing Guidelines.  PSR ¶ 28, Plea Agreement ¶ 9.

Based upon the defendant's role in the offense, that of a delivery person for a fentanyl distribution network, the government believes the defendant qualifies for a two-level role reduction for conduct that can be described as a minor participant, pursuant to USSG § 3B1.2(b). Plea Agreement ¶ 10(A).  The U.S. Probation Office believes the defendant, "as a runner of narcotics on behalf of a [Drug Trafficking Organization]," should receive a four-level reduction as a minimal participant.  PSR ¶ 30.  This is a factual determination for the Court to make.

Here, the minimal role reduction is designed to be applied to those operating "among the lowest level of drug trafficking functions, such as serving as courier, running errands, sending or

receiving phone calls or messages, or acting as a lookout." USSG § 2D1.1(e)(2)(B)(i). The government agrees the defendant should receive a role reduction, but as the delivery person for fentanyl trafficking organization the defendant is a step up from a mere courier, errand boy, phone person, or lookout. The way the dispatcher network operates is that a customer calls a number, places and order, and then that person receiving the order dispatches the defendant to deliver the requested fentanyl to the customer. This function is greater than that of a mere courier who simple transports drugs within an organization from point A to point B. The defendant, as the delivery person, actually delivers the drugs directly to the customer and then receives the payment from the customer. This is not a one time event but rather operating as the delivery person is their ongoing job. As such, while still a minor player in the overall scheme, they are also a step up in the hierarchy from a mere courier, errand boy, phone person, or lookout. We ask the Court to find the defendant is only a minor participant.

Because the defendant also qualifies as a "Zero Point Offender," pursuant to USSG § 4C1.1, the parties will recommend a two-level downward adjustment in his Sentencing Guidelines range. PSR ¶ 33, Plea Agreement ¶ 11.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level. PSR ¶¶ 34 - 35, Plea Agreement ¶ 13.

Prior to any additional departures or variances, the government believes defendant's initial Adjusted Offense Level is 21. With a Criminal History Category of I, defendant's initial advisory sentencing guideline range would be 37 to 46 months' imprisonment.

///

**Government's Sentencing Memorandum**                                      **Page 4**

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a two-level downward variance in his overall offense level.  Plea Agreement ¶ 12.

The government's additional two-level 3553(a) reduction would result in an Adjusted Offense Level of 19 and with a Criminal History Category of I, the defendant's advisory sentencing guideline range would be between 30 and 37 months' imprisonment.

Defendant has been in federal custody since the federal arrest on January 29, 2025.

**C.      Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 30 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was delivering large amounts of fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

**Government's Sentencing Memorandum**                                                    **Page 5**

The death toll from fentanyl is truly frightening. For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death. *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024). In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses. *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023). Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths. *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023). In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths. OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024). In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl. *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025). In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]." *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon*

**Government's Sentencing Memorandum**                                                            **Page 6**

*overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in  2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

The defendant was employed to deliver an extremely deadly poison to people.  The amount of fentanyl he delivered in this case, 1,074 grams, was not a user amount of fentanyl, but rather an amount that would have been intended for purposes of further distribution.  He and the organization he worked for sold poison to other drug dealers that was designed to be sold to others deeply addicted to a substance that they know can likely kill them.  Fentanyl kills.  Even in very small amounts, fentanyl is a deadly poison and this defendant distributed that poison for the sole purpose of making money – he got paid for working and he did this without any regard for the harm he was causing others.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate

**Government's Sentencing Memorandum** **Page 7**

deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 30 months' imprisonment is reasonable.  We ask the Court to impose it, to be followed by a three-year term of supervised release.

At the time of sentencing we will ask the Court to dismiss Count 2.

There is an appeal waiver.

Following his time in custody the defendant will likely be deported to Mexico.

Dated: May 6, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney